***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of parties.
3. An employee-employer relationship existed at all times relevant herein between plaintiff-employee and defendant-employer.
4. Defendant-employer was insured by The Hartford at all times relevant herein.
5. The alleged date of injury is June 3, 1999.
6. At the hearing, the parties submitted an Industrial Commission Form 22 Wage Chart, which was admitted into the record, and marked as Stipulated Exhibit (2). Subsequent to the hearing, the parties submitted a Packet of Medical Records, which is admitted into the record, and marked as Stipulated Exhibit (3).
7. The issues to be determined are as follows:
a. Whether plaintiff sustained an injury to his back on June 3, 1999 as the result of n injury by accident arising out of and in the course of his employment in the form of a specific traumatic incident;
b. If so, to what benefits, if any, is plaintiff entitled, and;
c. Whether plaintiff provided timely notice pursuant to N.C. Gen. Stat. § 97-22.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the deputy commissioner, plaintiff was thirty-nine (39) years of age, with his date of birth being April 24, 1963. Plaintiff attended school through the tenth grade, and obtained his GED in 1982. Plaintiff served in the United States Marines from 1980 to 1986.
2. Plaintiff began working for defendant-employer in May 1998 as a carpenter. During the time at issue, plaintiff's duties involved the installation of new ATM Machine covers as part of the Nations Bank to Bank of America change over. Defendant-employer contracted with that bank to perform these tasks. Also, as part of his duties, plaintiff would drive from site to site during a workday and typically worked with another employee.
3. On June 3, 1999, plaintiff and Mr. Charles Ruckert were working for defendant-employer in South Carolina installing the new ATM covers. At the hearing, plaintiff testified that in the process of removing the old ATM cover, Mr. Ruckert was on a ladder on the right side of a machine, and was reaching out towards the left with one foot off of the ladder. Observing this, plaintiff testified, he stepped onto a trash receptacle that was to the left of the machine with a screw-gun in his right hand, and screws in his left hand. Plaintiff further testified that he then lost his balance or stumbled, fell onto the curb of the ATM drive-through and hit his lower back, buttocks and tail bone.
4. During the hearing, evidence was presented regarding three types of outside ATM machines; one is attached to, and inserted in the main bank wall; a second is classified as an "in the wall" type, but is not attached to the main bank wall; and a third is an outside free standing machine. Plaintiff testified that his injury occurred at the first of these three types of machines, and offered Plaintiff's Exhibit 22 as an example of that type.
5. Ms. April Richardson, a Loomis Fargo security guard, was present at the ATM worksite in question on June 3, 1999. In her affidavit, which is part of the record, marked as Plaintiff's Exhibit (20), Ms. Richardson notes that her duties as a security guard require her to constantly observe the ATM machine being worked on. Further, Ms. Richardson attests to having observed plaintiff lose his footing while stepping from a concrete trash receptacle, and falling on the concrete curb on the left side of the ATM, and that Mr. Ruckert was present at the scene. Ms. Richardson also worked with plaintiff and Mr. Ruckert on June 4, 1999, and noted in her affidavit that on that date, she observed plaintiff speaking on the telephone about his injury the previous day. Additionally, Ms. Richardson noted that while on the telephone, plaintiff appeared to enter into an argument with the person to whom he was speaking, and that Mr. Ruckert then came forward and took the telephone from plaintiff.
6. Ms. Richardson's testimony at the hearing was generally consistent with what she swore to in her affidavit. However, although in many respects she was able to testify regarding her memory of events in great detail, she was uncertain as to the exact type of ATM machine that was being serviced on the date of plaintiff's alleged fall.
7. Mr. Charles Ruckert testified that while changing the covering of an ATM machine, he would be working no farther than six feet from plaintiff. Contrary to plaintiff's testimony, Mr. Ruckert did not recall plaintiff falling at work, describing or reporting any incident or complaining of experiencing any significant back pain either on June 3, 1999 or June 4, 1999. Regarding the type of ATM machines he and plaintiff worked on, Mr. Rucker testified that the type of trash receptacle depicted in Plaintiff's Exhibit (21), a diagram produced by plaintiff, would not physically fit in with the type of ATM machine depicted. The ATM machine depicted in Plaintiff's (21) is an outside, in the main bank wall type. The trash receptacle depicted in Plaintiff's (21) is a square concrete type. Defendants' Exhibit (4) consists of job logs and photocopies of photographs of ATM machines serviced on June 3, 1999. Mr. Ruckert testified that none of the ATM machines shown in Defendants Exhibit (4) have any type of trash receptacle nearby at all, much less of the type described by plaintiff as being involved in his injury.
8. Based upon the totality of the evidence of record, the undersigned gives great weight to the testimony of Mr. Ruckert as opposed to that of plaintiff and Ms. Richardson. This finding is based in part on the importance of the type of ATM machine and trash receptacle involved in the incident described by plaintiff, and the inherent reliability of the written job logs. More importantly, however, this finding is based upon the complete lack of any corroborating medical evidence prior to June 21, 2000, more than one-year after the purported incident, when a work-place injury is referred to in the records of plaintiff's counselor.
9. Following the incident described by plaintiff, he completed the workday on June 3, 1999 and worked a full day on June 4, 1999. On June 7, 1999, plaintiff was examined by Dr. Tonya Hudson with complaints of numbness and tingling in his legs. Crucial to this matter, plaintiff also reported that he had been experiencing those symptoms for the previous two to three weeks. Although plaintiff claims he made an appointment with Dr. Hudson due to worsening pain following his fall, none of Dr. Hudson's records refers any fall at work or elsewhere. To the contrary, Dr. Hudson's records reflect that plaintiff specifically denied that any traumatic incident had occurred.
10. Upon referral, plaintiff was examined by Dr. Steven W. Dibert on June 9, 1999. To Dr. Dibert, plaintiff reported numbness in his feet that was progressing into his knees, hips and buttocks. Dr. Dibert noted that there was no trauma prior to the onset of these symptoms, and there is no reference in Dr. Dibert's medical records to any workplace fall or traumatic injury. An MRI ordered by Dr. Dibert revealed a wedge shaped area in the posterior aspect of the cord at the T10 level most consistent with an arterial infarction, and degenerative changes at the L5-S1 level with a large anterior disc herniation. On July 6, 1999, Dr. Dibert advised plaintiff against occupations involving heavy lifting due to his asymptomatic herniated disc.
11. Dr. Neal S. Taub is the only physician who documents an alleged fall by plaintiff while working for defendant-employer. This is recorded in his office notes from plaintiff's initial visit on October 12, 2000. However, during the course of his treatment of plaintiff, Dr. Taub never received medical records from plaintiff's previous medical providers. Given the totality of the credible evidence of record, the undersigned does not give weight to this reference in Dr. Taub's records to a work-place injury.
12. Following the July 6, 1999 appointment with Dr. Dibert, plaintiff contends that he contacted Mr. Doug Johnson at defendant-employer's facility, and requested that he be placed back on the schedule full time. However, Mr. Johnson testified at the hearing that he received no contact from plaintiff during the period of July 6, 1999 through July 9, 1999. On July 12, 1999, plaintiff further contends Mr. Johnson telephoned him, and inquired as to whether he could operate a jackhammer, and that when plaintiff stated that he could not, he was terminated. However, Mr. Johnson testified that it was plaintiff who telephoned him on July 12, 1999, and that because plaintiff had not been in contact with defendant-employer, he was terminated during that conversation. Defendant-employer's standard policy permits the termination of employees with more than three unexcused absences. Based upon the totality of the evidence, plaintiff's testimony regarding the circumstances of his termination and the period of time immediately preceding his termination is not given weight. In fact, on July 13, 1999, the day after his termination, plaintiff contacted Dr. Dibert's office with new complaints of worsening back pain.
13. On June 3, 1999, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On June 3, 1999, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and is HEREBY DENIED.
2. Each side shall bear its own costs.
This the ___ day of April, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER